IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

```
JUDITH ALCOCER,              *
                             *
     Plaintiff,              *
                             *
     v.                      *      CV 615-94
                             *
BULLOCH COUNTY SHERIFF'S     *
OFFICE et al.,               *
                             *
     Defendants.             *
                             *
                             *
```

**O R D E R**

Presently before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint for Damages, in Part. (Doc. 30.) Plaintiff, Judith Alcocer, alleges that Defendants violated multiple federal laws and constitutional provisions. Defendants move to dismiss only a limited portion of Plaintiff's complaint: the claims for injunctive and declaratory relief against Sheriff Anderson in his official capacity. The Court **GRANTS** Defendants' motion.

**BACKGROUND**

On January 30, 2014, Deputy Sheriff Randall Norman observed Plaintiff driving east on U.S. Highway 80 in Bulloch County, Georgia. After running the license plate of the vehicle Plaintiff was driving through the Georgia Crime Information Center ("GCIC"), he discovered that the owner of the vehicle had

a suspended license. Suspecting that she was the vehicle's owner, he stopped Plaintiff and asked for her identification. After confirming that she was the vehicle's owner, Deputy Norman issued Plaintiff a citation for driving with a suspended license. He then arrested Plaintiff for the misdemeanor offense and transported her to the county jail for processing.

Plaintiff remained in the county jail for the next twenty-seven hours. She alleges that Defendants refused to release her despite the fact that she posted bond. In fact, Plaintiff claims that Defendants ignored her bond because they were awaiting notification from Immigration and Customs Enforcement ("ICE") on whether Plaintiff was here illegally, even though she provided Defendants with a copy of her birth certificate. Defendant does not deny these accounts.

Following this incident, Plaintiff filed suit in this Court. Relevant to the current motion, Plaintiff alleges that Sheriff Anderson (1) failed to formulate and implement a policy or custom that protects against violations of the civil rights of citizens, (2) established a custom, policy, or practice of making illegal traffic stops if someone looks Latino, and (3) established a custom and protocol of automatically detaining arrested Latinos in anticipation of an ICE hold. Plaintiff asks this Court to: (1) "[E]njoin Defendant's from assuming that all Latinos, like the Plaintiff are illegal aliens"; (2) "[E]njoin the Defendants from utilizing the policy, practice or custom of

2

routinely running license plates through GCIC, of drivers who appear Latina, like the Plaintiff, with no other legal reason for doing so."; (3) "[E]njoin the Defendants from refusing bond to Latinas, like the Plaintiff, because of an assumption on the part of the Defendants that all Latinas are illegal in this country."; (4) "[E]njoin the Defendants from referring Latinos to I.C.E. without legal grounds for doing so because the Plaintiff, an American-borne woman, was referred to I.C.E. as if she was an illegal alien."; (5) "[E]njoin the Defendant Sheriff from violating the Fourteenth, Fifth, and Fourth Amendments by illegally stopping, intimidating, detaining, searching and seizing Latinos for 'driving while brown'"; and 6) "[E]njoin the Sheriff from illegally detaining Latinos in anticipation of a Federal I.C.E. hold." (Doc. 26 ¶¶ 132-138.) Defendants argue that Plaintiff lacks standing to request injunctive or declaratory relief.

**STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 556 U.S. 544, 570 (2007)). Applying this standard requires a two-part test. See id. at 679. First, the Court asks whether the plaintiff has stated specific facts supporting a claim rather than mere legal conclusions. Id. Second, it asks

3

whether those facts might plausibly give rise to a right to relief. Id. at 680.

The first prong of the inquiry requires that the plaintiff plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While the Court must accept as "true all of the allegations contained in a complaint," it must not "accept as true a legal conclusion couched as a factual allegation." Id. Generalized conclusions and "bare allegations" will not allow the plaintiff to "unlock the doors of discovery." See id. The plaintiff must assert specific facts that "show" the defendant's misconduct. Id. at 679.

Once the Court separates the specific factual allegations from mere legal conclusions, it must accept those facts as true and "determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. Well-pleaded facts cannot be merely consistent with the alleged misconduct; they must allow the Court to infer that such misconduct was plausible. Id. at 678. Thus, facts which show only the possibility of misconduct are not enough. Id. The

complaint must allege facts that push the claim "across the line from conceivable to plausible." Id. at 683.

Finally, while a plaintiff does not have to "allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007)(quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

**DISCUSSION**

Before delving into the substance of Defendants' current motion to dismiss, the Court needs to clarify some confusion about the status of Defendants' previous motion to dismiss. (Doc. 13.) Plaintiff argues in her response to the current motion to dismiss that "Plaintiff's Second Amended Complaint states mostly that of Plaintiff's prior pleadings which the Court found plausible on its face, denying Defendant's (sic) first 12(b)(6) Motion to Dismiss Sheriff Lynn Anderson, in his official capacity." (Doc. 33 at 2.) The Court, however, made no such finding. The Court declared Defendants' first motion to dismiss moot, because Plaintiff amended the complaint to which it objected. The Court did not deny Defendants' motion on the merits or find Plaintiff's prior pleading "plausible on its

5

face." Having cleared up that misconception, the Court must now decide whether Plaintiff (1) has standing to request injunctive relief or (2) has standing to request declaratory relief.

**A. Request for Injunctive Relief**

Before a court reviews the merits of a case, it must first ensure the plaintiff has standing. Eland v. Basham, 471 F.3d 1199, 1204 (11th Cir. 2006). To establish standing, "the plaintiff must demonstrate injury in fact, causation, and redressability." Id. at 1205. If a plaintiff fails to meet any one of these requirements, the Court is without jurisdiction to decide the dispute. Id. at 1206.

Defendants claim that Plaintiff's request for injunctive relief fails to satisfy the injury-in-fact element because Plaintiff's claim of injury is too speculative. A plaintiff suffers an injury in fact when he suffers a harm that is "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Eland, 471 F.3d at 1207. Usually, a plaintiff satisfies the injury-in-fact element by alleging a past harm. When a plaintiff seeks injunctive or declaratory relief, however, he seeks to regulate ongoing or future conduct by alleging a future injury. McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1145 (11th Cir. 2014). Thus, determining whether a plaintiff has an injury in fact requires a special analysis. A court must determine whether the plaintiff has proven that "the threatened harm is

real and immediate, not conjectural or hypothetical." Id. at 1145. In the Eleventh Circuit, the future injury must be "imminent." Eland, 471 F.3d at 1207.

Because "each element of standing must be supported 'with the manner and degree of evidence required at the successive stages of the litigation,'" the reviewing court must conduct its analysis in light of where the litigation sits procedurally. Church v. City of Huntsville, 30 F.3d 1332, 1336 (11th Cir. 1994)(quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)). Thus, the burden of proof for standing at the motion-to-dismiss stage differs from that at the summary-judgment stage which differs from that at the trial stage. Lujan, 504 U.S. at 561. When standing is challenged on a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume[e] that general allegations embrace those specific facts that are necessary to support the claim.'" Id. These factual allegations, however, must be viewed in light of the Supreme Court's decisions in Twombly and Iqbal. Therefore, the allegations supporting standing, while taken as true, must be specific factual allegations and not merely conclusory statements.

**1. Plaintiff has not alleged an "imminent" injury in fact**

Plaintiff has failed to prove that her future injury is "imminent," first and foremost, because the future injury

7

alleged is too speculative. To obtain an injunction, a plaintiff must be at a real risk of suffering the future injury she seeks to avoid. Church, 30 F.3d at 1337. When determining whether a prospective injury is "real" or "immediate" federal courts assume that the plaintiff will abide by the law and not repeat the misconduct that led to her original injury. Id. at 1337-38. Thus, if a plaintiff's future injury depends on whether she will once again voluntarily break the law, the reoccurrence of her injury is much more speculative than if "for reasons beyond the plaintiff's control he or she is unable to avoid repeating the conduct that led to the original injury at the hands of the defendant." Id. at 1338.

In O'Shea v. Littleton, 414 U.S. 488 (1974), the Supreme Court determined whether minority citizens of Cairo, Illinois, had standing to pursue an injunction against county officials for allegedly discriminatory conduct in their administration of the county judicial system. The plaintiffs alleged that the State's Attorney and the Police Commissioner had engaged in a "pattern and practice of intentional racial discrimination" and they provided specific examples of such conduct in their complaint. Id. at 491. They also alleged that the county magistrate and judge set unlawful bonds for black citizens, imposed harsher sentences on black citizens, and forced black citizens to pay for jury trials. Id. at 492. In determining

that the plaintiffs injuries were too speculative to warrant an injunction, the Court noted:

> [T]he prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing before petitioners. Important to this assessment is the absence of allegations that any relevant criminal statute of the State of Illinois is unconstitutional on its face or as applied or that respondents have been or will be improperly charged with violating criminal law. If the statutes that might possibly be enforced against respondents are valid laws, and if charges under these statutes are not improvidently made or pressed, the question becomes whether any perceived threat to respondents is sufficiently real and immediate to show an existing controversy simply because they anticipate violating lawful criminal statutes and being tried for their offenses, in which event they may appear before petitioners and, if they do, will be affected by the allegedly illegal conduct charged. Apparently, the proposition is that if respondents proceed to violate an unchallenged law and if they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to discriminatory practices that petitioners are alleged to have followed. But it seems to us that attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture. . . . <u>We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct said to be followed by petitioners</u>.

<u>Id.</u> at 496-97 (emphasis added).

Here, Plaintiff's alleged injury suffers from the same defects as that in O'Shea: it is too speculative. First, a future encounter with the police of the type Plaintiff previously experienced will not occur unless she decides to once more engage in illegal conduct. Although Plaintiff alleges that

9

Deputy Norman conducted an illegal stop, he did not. Nothing prohibited Deputy Norman from running Plaintiff's license plate through the GCIC system. See Humphreys v. State, 696 S.E. 2d 400, 402 (Ga. Ct. App. 2010)(upholding traffic stop after Officer checked a vehicle's tag through the GCIC and discovered its owner had a suspended license); Hill v. State, 743 S.E. 2d 489, 491 (Ga. Ct. App. 2013)(citing with approval Humphreys and noting that "visual surveillance of vehicles in plain view does not constitute an unreasonable search for Fourth Amendment purposes, even if surveillance is aided by an officer's use of a license plate tag reader, because a defendant does not have a reasonable expectation of privacy in a plainly visible license plate."); see also Eagle v. Morgan, 88 F.3d 620, 627-28 (8th Cir. 1996)(noting that persons do not have a reasonable expectation of privacy in criminal databases created by the state such as the NCIC). And, once the GCIC alerted him that the owner of the vehicle had a suspended license, he had reasonable suspicion to conduct the stop. See Humphreys, 696 S.E. 2d at 402; Hill v. State, 743 S.E. at 491-92. Thus, it was Plaintiff's voluntary decision to break the law that led to her alleged injury. Had Plaintiff not driven her car illegally, she would never have even encountered Defendants.

But, even if Plaintiff finds herself in a future encounter with police through no fault of her own, any claims of a future injury arising after her encounter are still speculative. To

obtain an injunction, Plaintiff must credibly allege that she, herself, faces a realistic threat from the future application of the Sheriff's allegedly racially biased policies. See City of Los Angeles v. Lyons, 461 U.S. 95, 106 n.7 (1983). This means that she must make factual allegations that, when taken as true, would demonstrate that she would not only be stopped again by the Sheriff's Office, but that she would be arrested, denied release after posting bond, and detained illegally in anticipation of an ICE hold. Id.

Any allegations of this type, however, again rest entirely upon the assumption that Plaintiff will once more engage in illegal activity that exposes her to potentially discriminatory conduct. Plaintiff does not deny that she was driving with a suspended license, nor does she allege that the law prohibiting driving without a license violates the Constitution. She alleges only that Defendants never should have discovered she was driving without a license and that they violated her rights by actions taken after they arrested her. Any threat of future injury to Plaintiff, then, cannot be separated from her illegal conduct. Given the fact that Plaintiff's threat of future injury turns so squarely on the proposition that Plaintiff will once more engage in illegal activity, and the fact that the Court presumes Plaintiff will not engage in future illegal conduct, the Court finds Plaintiff claim of future injury to be mere conjecture.

## 2. Plaintiff has not sufficiently pled an injury in fact

In addition to the fact that plaintiff's future injury is not actually imminent, Plaintiff also fails to sufficiently allege that her future injury is imminent. Plaintiff makes only conclusory allegations that the Sheriff sanctioned a "custom and practice" of racial bias, and she provides no specific factual allegations to make such a claim plausible. She provides no personal tales of the alleged bias other than a single instance of alleged mistreatment, and she provides no specific allegations that others were also victims of racial bias. Nor does she provide specific factual allegations indicating the Sheriff pushed this policy, such as alleged statements he made, alleged documents indicating such a policy, or alleged testimony of former officers. While Plaintiff need not provide concrete proof of such allegations, she must provide enough factual specificity to allow this Court to deem such a claim plausible. Mere conclusory allegations will not do.

Although one or more Defendants might very well have violated Plaintiff's constitutional or statutory rights in this case, this one instance of misconduct does nothing to provide sufficient factual allegations that the Sheriff sanctioned a practice of discrimination so pervasive that it constitutes a credible and imminent threat of future injury to the Plaintiff herself. See Lyons, 461 U.S. at 108 (noting that the existence of individual episodes of unfortunate police encounters does

12

not, in and of itself, establish a likely future injury). Without sufficient factually specific allegations to make it plausible that law-enforcement officials engage in a practice of racial bias, the Court cannot accept Plaintiff's conclusory allegations that the Sheriff condoned, or even turned a blind eye toward, racial bias. And, without accepting the allegations of racial bias, the Court cannot declare that Plaintiff faces an imminent threat of once more suffering the indignity of an alleged illegal stop, illegal arrest, and illegal detention because of her Latina complexion.

3. **Plaintiff's future injury is not redressible**

Plaintiff also fails to establish standing because her proposed injunction does not provide a remedy for her alleged future injury. To establish standing, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 561. Here, the generality of the Plaintiff's injunctive requests makes it impossible for the Court to redress any future injury. Plaintiff's injunctions are essentially requests that Defendants obey the law. A court, however, cannot issue an injunction "demanding that a party do nothing more specific than 'obey the law.'" Eland, 471 F.3d at 1209. Such an injunction would not be capable of enforcement and would violate the specificity requirement of Federal Rule of Civil Procedure 65. Id. at 1210. If Defendants are already violating the law, for which they face

pre-existing penalties, an injunction issued by the Court ordering Defendants to obey the law, without any additional specificity, would be meaningless and futile. Any injunction requested must have enough specificity that it can be enforced and that it will actually remedy the alleged future injury. None of Plaintiff's requested injunctions satisfy this test. Therefore, Plaintiff's claim for injunctive relief will not redress her injury.

**B. Request for Declaratory Relief**

In addition to her request for injunctive relief, Plaintiff also requests declaratory relief. Plaintiff requests that this Court:

1. Declare the defendants' practice of assuming that all Latinas, like the Plaintiff, are illegal aliens, unconstitutional.
2. Declare the practice of running the license plate of people who appear Latina through GCIC without having a legal reason to do so in (sic) unconstitutional.
3. Declare that refusing to post bond to a Latina without the benefit of seeing a judge and because the Defendant's assume that a Latina is illegally in the country, is unconstitutional.
4. Declare that referring all Latinos to I.C.E., without legal grounds to do so, unconstitutional.

(Doc. 26, Second Amended Complaint, ¶¶ 164-167.) Defendants assert that Plaintiff's cannot properly allege a claim for declaratory relief because the parties do not have a substantial continuing controversy. The Court agrees that Plaintiff cannot ask for declaratory relief.

Plaintiff cannot ask for declaratory relief because she does not have standing to do so. Declaratory relief is, like injunctive relief, prospective relief. To establish standing for prospective relief, a plaintiff "'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'" McGee v. Solicitor Gen. of Richmond Cty, 727 F.3d 1322, 1325 (11th Cri. 2013)(quoting Koziara v. City of Casselberry, 392 F.3d 1302, 1305 (11th Cir. 2004)). "The plaintiff must allege facts from which the continuation of the dispute may be reasonably inferred." Emory v. Peeler, 756 F.2d 1547, 1552 (11th Cir. 1985). "[T]he continuing controversy may not be conjectural, hypothetical, or continent; it must be real and immediate, and create a definite, rather than speculative threat of future injury." Id.

Plaintiff's requests for declaratory relief are almost identical to her request for injunctive relief. For the same reasons that Plaintiff lacked standing to obtain injunctive relief, she also lacks standing to obtain declaratory relief: Plaintiff has not shown a real and immediate threat of future harm. Therefore, the Court **DISMISSES** Plaintiff's request for declaratory relief.

## CONCLUSION

While Plaintiff certainly has standing to challenge her alleged past harms at this stage of the litigation, the Court finds that any future injury to Plaintiff is not real or

15

immediate enough to establish the injury-in-fact element necessary for standing to pursue the injunctive and declaratory relief Plaintiff requests. Therefore, the Court **GRANTS** Defendants' motion to dismiss with respect to Plaintiff's request for declaratory and injunctive relief against Sheriff Anderson. (Doc. 30.)

**ORDER ENTERED** at Augusta, Georgia, this 18th day of January, 2017.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA