# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
### STATESBORO DIVISION

JUDITH ALCOCER,

    Plaintiff,

    v.

BULLOCH COUNTY SHERIFF'S
OFFICE et al.,

    Defendants.

FILED
Scott L. Poff, Clerk
United States District Court

By James Burrell at 4:55 pm, Sep 29, 2017

CV 615-94

## O R D E R

Presently before the Court is a motion for summary judgment (doc. 57) and two motions to exclude expert testimony (docs. 71, 72) filed by Defendants, Sheriff Lynn M. Anderson, Deputy Randall Norman, Sergeant Kent Munsey, Jailer Ashley Mills, Captain John Staten, and Captain Jason Kearney. (Doc. 57.) Plaintiff, Judith Alcocer, has sued for damages under § 1983 alleging that Defendants committed a variety of constitutional violations. Defendants claim that they committed no constitutional violations and that they cannot be found liable for damages under 18 U.S.C. § 1983. The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment and it **DENIES** Defendants' motion to exclude expert testimony.

# I. BACKGROUND

At approximately 1:30 p.m. on January 30, 2014, Deputy Randall Norman and Sergeant Kent Munsey of the Bulloch County Sheriff's Office ("Sheriff's Office") observed Plaintiff driving east on U.S. Highway 80 in Bulloch County, Georgia. (Doc. 94-2 at 2.) After running Plaintiff's license plate through the Georgia Crime Information Center ("GCIC"), Deputy Norman discovered that the owner of the vehicle had a suspended license. (Doc. 57-1 at 2.) Suspecting that Plaintiff was the vehicle's owner, he pulled onto the road to stop Plaintiff. (Id.)

Before Deputy Norman could activate his lights, however, Plaintiff pulled into a convenience store parking lot and went inside to make a purchase. (Doc. 105 at 4.) Deputy Norman followed her into the parking lot and confronted her in the store. (Doc. 57-1 at 2.) Deputy Norman confirmed Plaintiff's identify and that she was the vehicle's owner. (Id.) He then issued Plaintiff a citation for driving with a suspended license, arrested her for the misdemeanor offense, and transported her to the Bulloch County Detention Center ("Detention Center"). (Id.)

Detention Center staff booked Plaintiff and scanned her fingerprints into the computer system. Plaintiff's prints were then "automatically sent to several different databases, including GCIC, NCIC, and federal law enforcement agency

2

databases." (Doc. 57-1 at 4.) Around 2 p.m., the Sheriff's Office received a fax from Immigration and Customs Enforcement ("I.C.E."). (Doc. 97-1 at 2.) It stated:

> I.C.E. records indicate that this subject is not legally in the United States and appears to be subject to removal proceedings. . . . This is not a government detainer. This information is for law enforcement use and is being provided for informational purposes only. This response is not supported by fingerprints.

(Id.)

While Detention Center staff were booking Plaintiff, her sister, Susana Hinojosa, attempted to secure her release. (Doc. 96 at 8-11.) Mrs. Hinojosa asked Detention Center staff what she needed to do to get Plaintiff out of jail. (Id. at 10.) They told Mrs. Hinojosa that Plaintiff needed a $2,000 bond. (Id.) Mrs. Hinojosa walked across the street to a bonding company, secured a bond for Plaintiff, returned to the Detention Center, and awaited Plaintiff's release. (Id. at 10-12.)

After waiting several hours, the bonding company called Mrs. Hinojosa. (Id. at 12) It informed her that the Detention Center would not release Plaintiff because Plaintiff was under an I.C.E. hold. (Id.) Mrs. Hinojosa once again questioned Detention Center staff about Plaintiff's release. (Id.) Detention Center staff confirmed that they would not release Plaintiff because I.C.E. had placed a hold on her. (Id.)

Naturally, Mrs. Hinojosa protested. (Id. at 13.) She informed Detention Center staff that Plaintiff was a United

States citizen born in South Carolina. (Id.) She also asked what documentation she needed to prove Plaintiff's citizenship. (Id.) Detention Center staff, however, largely ignored Mrs. Hinojosa. Ultimately, she failed to secure Plaintiff's release and had to return home for the evening. (Id. at 13-14.)

The next morning, January 31, 2014, Mrs. Hinojosa continued her efforts. (Id. at 15-16.) She called the Sheriff's Office every fifteen minutes from 8 a.m. until 11 a.m. (Id.) Around 11 a.m. the Sheriff's Office finally gave her a number for I.C.E.'s Savannah office. (Id. at 16.) She eventually reached Mr. Franks, an I.C.E. agent. (Id. at 17, 19.) Mr. Franks told Mrs. Hinojosa that he would contact the Sheriff's Office to see why it was holding Plaintiff. (Id. at 20.) He also said he would look into sending an order to release Plaintiff. (Id.) Lastly, he told Mrs. Hinojosa to take Plaintiff's birth certificate, social security card, medical records, and school records to the Sheriff's Office. (Id.)

Mrs. Hinojosa followed Mr. Frank's instructions and took the suggested paperwork to the Detention Center around 12 p.m. that day. (Id. at 15, 23.) According to Mrs. Hinojosa, when she tried to show the paperwork to the Detention Center staff, "they didn't want to look at it because they told me ICE had a hold. So they were very rude. They were like we don't need to look at that. So I can't even tell you who I showed the paperwork to because they didn't look at it." (Id. at 24.)

Still unable to secure Plaintiff's release, Mrs. Hinojosa took the paperwork with her and returned to her job. (Id. at 23.)

Later in the day, Mr. Frank's called Mrs. Hinojosa to tell her that he was sending a fax ordering the Detention Center to release Plaintiff. (Id. at 21.) The time stamp on the order sent by Mr. Franks states 3:39 p.m. (Doc. 94-5 at 2.) Plaintiff left the Detention Center at 5:44 p.m. on January 31, 2014 — approximately 25 hours after her initial arrival. (Doc. 94-1 at 2.)

Defendants, for their part, never explicitly deny that they were holding Plaintiff because of the detainer. Neither do they deny that they refused to post the bond secured by Mrs. Hinojosa. Rather, they state only that on January 31 — the day after Plaintiff's arrest — they "received a notification from [I.C.E.] that the detainer previously placed by the Savannah [I.C.E.] office was cancelled," and "in any event, Plaintiff secured a bond . . . . and [ ] left the [Detention Center] at approximately 5:45 p.m." (Doc. 57-6 at 5.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law, and a dispute is

genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-moving party's] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. Anderson, 477 U.S. at 255.

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because the standard for summary judgment mirrors that of a directed verdict, the initial burden of proof required by either party depends on who carries the burden of proof at trial. Id. at 323. When the movant does not carry the burden of proof at trial, it may satisfy its initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp., 477 U.S. 317). The movant cannot meet its initial burden by merely

declaring that the non-moving party cannot meet its burden at trial. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presented evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993). If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of Court gave Plaintiff notice of the motion for summary judgment and informed her of the summary

judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 59.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. DISCUSSION

In her complaint, Plaintiff challenges two separate seizures. First, Plaintiff challenges the validity of her arrest for driving without a suspended license. Second, Plaintiff challenges the validity of her extended detention at the Detention Center.

Plaintiff brings suit under 42 U.S.C. § 1983. Section 1983 allows citizens to sue state governments and state officials for violations of rights granted them under the United States Constitution. To succeed in a § 1983 action, "a plaintiff must make a prima facia showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." <u>Marshal Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993)(citing 42 U.S.C. § 1983).

Plaintiff claims Defendants committed four constitutional violations. Plaintiff alleges that: (1) Deputy Norman and Sergeant Munsey violated her Fourth Amendment right to be free from unreasonable search and seizure when they ran her license plate through the GCIC database and seized her based on the results (doc. 26 ¶¶ 108-112); (2) Jailer Ashley Mills and Captain John Staten violated her Fourth Amendment right to be free from unreasonable seizure when they refused to post her bond until they could verify her immigration status (id. ¶¶ 72-76); (3) Deputy Norman and Sergeant Munsey violated the Fourteenth Amendment's Equal Protection Clause when they targeted her for a search and seizure based upon racial profiling (id. ¶¶ 93-109); and (4) Defendants violated her Fourteenth Amendment due process rights when they detained her without probable cause (id. ¶¶ 139-158); and (6) Sheriff Anderson, Captain Staten, Captain Kearney, and Sergeant Munsey are subject to supervisory liability for the unconstitutional actions of their subordinates (id. ¶¶ 8-9).

In their motion for summary judgment, Defendants make three arguments. First, all Defendants challenge the legal and factual basis of the alleged constitutional violations. Second, Sheriff Anderson, Captain Staten, and Jailer Mills argue they are entitled to qualified immunity with regards to their role in detaining Plaintiff. Third, Sheriff Anderson, Captain Staten,

Captain Kearney, and Sergeant Munsey argue that they are not subject to supervisory liability.

Because the first step in a § 1983 action is determining whether a constitutional violation occurred, the Court begins with Defendants' challenges to Plaintiff's constitutional claims. If Plaintiff establishes any constitutional violations, the Court will consider Defendants' arguments that they are entitled to qualified immunity and thus exempted from liability under § 1983. It will also consider Defendants' arguments that they should not be subject to supervisory liability under § 1983.

## A. Constitutional Violations

### 1. Unconstitutional Stop and Seizure Claim

Plaintiff claims Deputy Norman and Sergeant Munsey violated her Fourth Amendment right to be free from unreasonable search and seizure when they ran her license plate, when they seized her at the store, and when they arrested her. The Court previously concluded that Deputy Norman and Sergeant Munsey did not violate the Constitution when they ran her license plate. (Doc. 60 at 9-10.) It also concluded that they did not violate the Constitution when they stopped her at the store. (Id.) Thus, the only question is whether they violated the Constitution when they arrested Plaintiff.

10

To make a constitutional arrest without a warrant, an officer must establish probable cause. Poulakis v. Rogers, 341 F.App'x 523, 526 (11th Cir. 2009). An officer establishes probable cause when he has "facts and circumstances within [his] knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." U.S. v. Gonzalez, 969 F.2d 999, 1002 (11th Cir. 1992) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). Deputy Norman received reliable information that the owner of Plaintiff's vehicle had a suspended license. Plaintiff has not challenged the reliability of the GCIC records upon which Deputy Norman relied. After Deputy Norman confirmed Plaintiff's identity and her ownership of the vehicle, he had more than a reasonable belief that she was driving with a suspended license. Thus, Deputy Norman and Sergeant Munsey had probable cause to arrest Plaintiff, and they did not violate the Constitution.

Because Deputy Norman and Sergeant Munsey did not violate the Fourth Amendment when they seized and arrested Plaintiff, Plaintiff cannot succeed on her respective § 1983 claim. Accordingly, the Court **GRANTS** summary judgment in favor of Defendants with respect to Plaintiff's Fourth Amendment illegal search and seizure claim against Deputy Norman and Sergeant Munsey.

## 2. Unconstitutional Detention Claim

Defendants make three arguments refuting Plaintiff's unconstitutional detention claims. First, they argue that they may detain a subject arrested without a warrant who has not posted bond for up to 48 hours before granting her a probable cause hearing. (Doc. 57-6 at 10-12.) Second, they argue that, if they did detain Plaintiff based on her immigration status, they had probable cause to detain her. (Doc. 70 at 5.) Third, they argue that "Plaintiff has not shown through the introduction of evidence in the record that she was held after her bond posted," nor has she shown in the record that "she was in fact subject to a second arrest and detention based on a response from the AFIS [Automated Fingerprint Identification System] system." (Id.)

### a. Detentions of Less Than 48-Hours

Defendants' first argument relies upon the Supreme Court's decision in County of Riverside v. McLaughlin, 500 U.S. 44 (1991). Defendants claim that McLaughlin only requires a judicial determination of probable cause within 48 hours of a person's arrest. (Doc. 57-6 at 10-11.) They then assert that because "Plaintiff was released on bond after approximately 25 hours," she was released "well within the permissible time limits discussed by the Supreme Court in McLaughlin," and her claim should fail. (Id. at 11.)

Defendants' argument fails for two reasons. First, McClaughlin is inapplicable to the present case. The question posed in McLaughlin was: how quickly must a jurisdiction provide a probable cause hearing to a suspect arrested without a warrant? 500 U.S. at 55-57. The question posed in the present case is: how long may a jurisdiction refuse to post the bond of a suspect arrested without a warrant? These two questions are not the same. Thus, McLaughlin does not entitle Defendants to summary judgment.

Second, and relatedly, McLaughlin did not grant jurisdictions a 48-hour blank check to hold suspects arrested without a warrant. McLaughlin declared that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply" with the Constitution. 500 U.S. at 56 (emphasis added). The Court specifically noted that a probable cause determination does not pass "constitutional muster simply because it is provided within 48 hours. Such a hearing may nonetheless violate [the Constitution] if the arrested individual can prove that his or her probable cause determination was delayed unreasonably." Id. at 56.

The 48-hour mark is merely a useful tool to determine the presumptive reasonableness of the disputed detention. A probable cause hearing held within 48 hours is presumed reasonable. Id. at 57. A probable cause hearing held outside

13

of 48 hours is presumed unreasonable. Id. The Court only contrived the 48-hour mark because it had to. See id. at 56 ("Although we hesitate to announce that the Constitution compels a specific time limit, it is important to provide some degree of certainty so that State and counties may establish procedures with confidence that they fall within constitutional bounds."). Thus, the pertinent question is not whether a jurisdiction provided a probable cause hearing within 48-hours, but whether a jurisdiction provided a probable cause hearing within a reasonable amount of time.

Because McLaughlin does not permit a blanket 48-hour detention period, Defendants cannot rely on the fact that they released Plaintiff in only 25 hours. Instead, they must assert that Plaintiff has not produced sufficient evidence to prove her detention was unreasonable. As discussed below, however, Plaintiff has presented significant evidence that Defendants unreasonably delayed her release. Thus, even if McLaughlin was applicable to Plaintiff's case, Defendants could not prevail at the summary-judgment stage. Accordingly, the Court **DENIES** Defendants' claim that McLaughlin entitles them to summary judgment.

### b. Sufficiency of Evidence

Defendants argue that Plaintiff has not provided sufficient evidence that they held her after they posted her bond or that they held her because of an I.C.E. hold. But to establish a

14

Fourth Amendment violation for unreasonable detention, Plaintiff does not have to show that Defendants held her after they posted her bond or that Defendants held her because of an I.C.E. hold. Plaintiff need only prove Defendants held her after she was eligible for release and lacked probable cause to detain her after she was eligible for release. See Morales v. Chadbourne, 793 F.3d 208, 217 (1st Cir. 2015) ("Because Morales was kept in custody for a new purpose after she was entitled to release, she was subjected to a new seizure for Fourth Amendment purposes — one that must be supported by a new probable cause justification."); Mercado v. Dallas Cty., Texas, 229 F. Supp. 3d 501, 513 (N.D. Texas Jan. 17, 2017) (holding that a jurisdiction's detention of a suspected illegal alien without probable cause after she was otherwise eligible for release would violate the Fourth Amendment). Defendants do not claim that Plaintiff failed to produce evidence she was held without probable cause. The Court, therefore, must only decide whether Plaintiff provided sufficient evidence that a reasonable jury could find Defendants held her after she was eligible for release.

Plaintiff offers two lines of evidence that Defendants held her after she was eligible for release. The first line of evidence is notes taken by Defendants during Plaintiff's incarceration. The first entry, dated January 30, 2014, states "contact [I.C.E.] in Atlanta GA for pick up before releasing."

(Doc. 95-1 at 3.) The second entry, dated January 31, 2014, states "[p]er Captain Staten, if I.C.E. does not send a hold on subject by 02/03/2014, subject can post bond. <u>Bond is in file.</u>" [1] (<u>Id.</u> (emphasis added).) The third entry, dated January 31, 2014, states "[p]er Captain Staten if we do not hear anything from [I.C.E.] by Monday, then subject can post bond on Monday." (<u>Id.</u>) The final entry, dated January 31, 2014, states "[I.C.E.] sent a release on their detainer for subject. Paperwork in subject's file. Subject was bonded by Akins Bonding Company." (<u>Id.</u>)

The second line of evidence is the deposition testimony of Plaintiff's sister, Susana Hinojosa. Mrs. Hinojosa testified that after Defendants told her "that the bond was going to be about 2,000 dollars," she "went across the street to talk to the bails bond man lady to see if she could help me." (Doc. 96 at 11-12.) She further testified that:

> I got everything took care of with the bond lady. She told me I had to sign the bond and everything. And I said okay. She said she would take care of it.
> I walked back over to the jailhouse and I sit there and I'm waiting for them to release her and then come about I think it was between 5:00 and 6:00 o'clock they told me that ICE has a hold on her after I had been sitting there for four hours.
> <u>They told me they're not releasing her because ICE has a hold on it.</u> And I only found that out because the bonds

---

[1] The Court notes that Plaintiff was arrested on January 30, 2014 — a Thursday. February 3, 2014 was a Monday. Thus, Defendants were considering jailing Plaintiff — an ostensible American citizen — an additional 48 hours not because of an I.C.E. hold, but merely in <u>anticipation of</u> an I.C.E. hold.

lady called me and told me and then I went up to the window and asked.

(Id. at 12 (emphasis added).)

The Court finds that a reasonable fact-finder could conclude that both of these lines of evidence demonstrate Defendants improperly refused to post Plaintiff's bond and thus held her after she was eligible for release. Accordingly, Court **DENIES** Defendants' motion for summary judgment with regards to their claim that Plaintiff did not provide sufficient evidence that Defendant held her after she was eligible for release.

### c. Probable Cause

The Court must now determine whether Defendants had probable cause to continue detaining Plaintiff despite the fact she had posted bond. Probable cause "is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Maryland v. Pringle, 540 U.S. 366, 370 (2005) (internal quotations and citations omitted). It asks whether there are "facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" Gerstein v. Pugh, 420 U.S. 103, 112 (1975). When answering this question, courts must look at the "totality of the circumstances" and decide whether the facts "viewed from the standpoint of an objectively reasonable police officer, amount

to probable cause." Pringle, 540 U.S. at 370 (internal quotations and citations omitted).

Defendants argue that even if they did delay releasing Plaintiff, they had probable cause to continue detaining her. First, they claim the initial fax sent by I.C.E. gave them probable cause to believe Plaintiff was in the country illegally. Second, they claim that Georgia law allows officers to detain persons while investigating their immigration status. The Court rejects both arguments.

### i. I.C.E. Fax

The Court begins with the initial fax I.C.E. sent to Defendants. The fax stated: "I.C.E. records indicate that this subject is not legally in the United States and appears to be subject to removal proceedings. . . . This is not a government detainer. This information is for law enforcement use and is being provided for informational purposes only. This response is not supported by fingerprints." (Id.) The fax contained no other relevant information.

The Court finds that, for multiple reasons, this fax did not contain enough information to support probable cause. First, official I.C.E. detainers require the issuing officer to establish probable cause. Morales, 793 F.3d at 216. The fax I.C.E. sent specifically stated that it was not an official detainer. Defendants therefore should have assumed that I.C.E. did not have probable cause and that, without an independent

basis, neither did they. Second, the fax gives no specific information about the Plaintiff's immigration background, her country of origin, or why I.C.E. believed she was subject to removal. In other words, the fax gave Defendants no factual justification for why they should continue to detain Plaintiff. Third, the fax didn't even definitively state that Plaintiff was subject to removal. It stated only that she "appears to be subject to removal" without elucidating why she was subject to removal.

The Court also finds that — taking the facts in the light most favorable to Plaintiff — even if the fax did contain sufficient information to establish probable cause, it did not support probable cause when viewed in the totality of the evidence available to officers. Kingsland, 382 F.3d 1220, 1228 (11th Cir. 2004) (holding that officers may not "turn a blind eye to exculpatory information that is available to them"). In addition to the fax, Defendants had affirmative evidence that Plaintiff was not only in the country legally, but that she was most likely a United States citizen. When Plaintiff was arrested, she had in her possession a valid Georgia driver's license. (Doc. 94-3 at 2.) Georgia driver's licenses are not given to persons in the country illegally, see O.C.G.A. § 19-11-9.1(a)(2), and Defendants do not argue that they believed Plaintiff's license was fake. Plaintiff also gave Defendants her social security number. (Id.) Defendants, however, did not

use this number to double check her status with I.C.E. Finally, Plaintiff's sister verbally attested to Plaintiff's status as an American citizen and brought to the Detention Center Plaintiff's "birth certificate, her social security card, her medical records from the health department in Metter, and her papers from the school from the Board of Education." (Doc. 96 at 15.) Because Defendants had access to all of this exculpatory evidence, they did not have probable cause to detain Plaintiff. Kingsland, 382 F.3d at 1230 ("[A] reasonable jury could find that the appellees' investigation [of probable cause] was deficient in that the officers consciously and deliberately did not make an effort to uncover reasonably discoverable, material information.").

Ultimately, the detaining officer is responsible for ensuring that he has probable cause to detain a suspect. Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) ("An arresting officer is required to conduct a reasonable investigation to establish probable cause."); see Ortega v. Christian, 85 F.3d 1521, 1525 (11th Cir. 1996) (finding no probable cause for arrest based on a tip given by a confidential informant in part because the arresting officer did not take "any independent steps to investigate the informant's tip or had any evidence prior to arresting [the plaintiff] which would have corroborated the informant's identification of [the plaintiff] as a perpetrator in the commission of the crime"). He cannot rely on

unsubstantiated allegations, especially allegations as vague and conclusory as the initial fax sent by I.C.E. See id. at 1525. Had Defendants conducted any amount of investigation they would most likely have been able to verify Plaintiff's immigration status. See Kingsland, 382 F.3d at 1229 ("[A] police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. Nevertheless, an officer may not choose to ignore information that has been offered to him or her . . . [n]or may the officer conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts . . . .") (internal citations and quotations omitted). Because they did not, Plaintiff suffered an unacceptable deprivation of her most basic and fundamental constitutional rights. Accordingly, the Court **DENIES** Defendants' motion for summary judgment with respect to Defendants' claim that the initial fax sent by I.C.E. established probable cause to detain Plaintiff after she was otherwise eligible for release.

### ii. Georgia Law

In addition to the I.C.E. fax, Defendants also claim that Georgia law allowed them to detain Plaintiff. They point to O.C.G.A. § 17-5-100(b)-(c):

> (b) . . . during any investigation of a criminal suspect by a peace officer, when such officer has probable cause to believe that a suspect has committed a criminal violation, the officer shall be authorized to seek to

verify such suspect's immigration status when the suspect is unable to provide one of the following:

> (2) A valid Georgia driver's license
>
> . . . .
>
> (6) Other information as to the suspect's identity that is sufficient to allow the peace officer to independently identify the suspect.

(c) When attempting to determine the immigration status of a suspect . . . a peace officer shall be authorized to use any reasonable means available to determine the immigration status of the suspect, including:

> (1) Use of any federal identification database;
>
> . . . .
>
> (4) Contacting an appropriate federal agency.

Defendants claim that § 17-5-100(b)-(c) gave them probable cause to detain Plaintiff for purposes of investigating her immigration status.

Defendants, however, have misinterpreted § 17-5-100(b)-(c). Section 17-5-100(b)-(c) does not allow officers to detain persons solely because they suspect they are in the country illegally. It only allows officers to verify a suspect's immigration status if he meets three specific conditions. First, the officer must have already been investigating the suspect for a criminal violation. Second, the officer must have probable cause to believe the suspect committed a criminal violation. Third, the suspect must have been unable to provide sufficient identification to confirm her identity and

immigration status. Section 17-5-100(b), therefore, does not stand for the proposition asserted by Defendants.

But, even if § 17-5-100(b)-(c) did allow Defendants to detain a suspect solely for purposes of verifying her immigration status, it would not have allowed Defendants the opportunity to do so here. When Deputy Norman confronted Plaintiff for driving with a suspended license, Plaintiff gave the Deputy a valid Georgia Driver's license. A Georgia driver's license is specifically listed as an accepted form of identification under § 17-5-100(b)(2). Additionally, the detention Plaintiff challenges did not occur _during_ Defendants' investigation of her suspended license; it occurred after Defendants' investigation, when Defendants refused to post Plaintiff's bond while waiting to hear from I.C.E. Thus, § 17-5-100(b) did not grant Defendants the ability to detain Plaintiff or establish probable cause for her detention. Accordingly, the Court **DENIES** Defendants' summary judgment motion with respect to their assertion that O.C.G.A. § 17-5-100(b)-(c) gave them probable cause to detain Plaintiff.

### 3. Equal Protection Claim

Plaintiff claims that Defendants violated the Equal Protection Clause by using racial profiling to target her for investigation. "The Equal Protection Clause requires government entities to treat similarly situated people alike." Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1313 (11th Cir. 2006). To

23

succeed on an equal protection claim that alleges selective enforcement, a plaintiff must show "(1) that [she was] treated differently from other similarly situated individuals, and (2) that [the defendant] unequally applied a facially neutral [law] for the purpose of discriminating against [her]." Id. at 1314.

Defendants claim that Plaintiff has not provided "any evidence demonstrating discrimination on the part of the [Sheriff's Office]." (Doc. 57-6 at 17.) Plaintiff asserts that she has. (Doc. 105 at 21.) She claims that "[t]he racial breakdown of Bulloch County is 60% white and 40% non-white but 60% of the traffic citations are issued to the non-white group, of which [Plaintiff] is a member, therefore, the white motorists are the comparators to [Plaintiff]." (Id.) Plaintiff also asserts that "Defendants hold road blocks in predominately non-white neighborhoods." (Id.)

The Court finds that Plaintiff has not shown that she was treated differently than similarly situated individuals. First, the Court does not accept Plaintiff's statistical disparity assertion because Plaintiff includes no citation to the record. (Doc. 91.) Second, Plaintiff's evidence does not demonstrate selective enforcement. The statistical disparity is mild, at best, and it does nothing to show that race was the factor responsible for the disparity of traffic citations issued. The same is true for the alleged road blocks in non-white areas. Based upon the evidence presented by Plaintiff, no reasonable

jury could conclude that Defendants engaged in racial profiling which violated the Fourteenth Amendment. Thus, the Court **GRANTS** Defendants' motion for summary judgment with regards to Plaintiff's equal protection claim.

### 4. Substantive Due Process and Procedural Due Process

Plaintiff makes two claims under the Fourteenth Amendment's due process clause. Plaintiff claims that Defendants "violated [her] substantive due process rights to have her dignity, and her personal autonomy preserved from the unnecessary and arbitrary actions of the Defendants." (Doc. 26 ¶ 142.) She also claims that "Defendants violated procedural due process when she was illegally held in jail after obtaining bond, on an erroneous Immigration Customs (I.C.E.) hold." (Doc. 105 at 22.)

Plaintiff's substantive due process claim fails because it is repetitive of her Fourth Amendment claim. "[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." Cty. Of Sacramento v. Lewis, 523 U.S. 833, 843 (1998); see Graham v. Connor, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for

analyzing these claims."). The Fourth Amendment's unreasonable search and seizure provision already protects Plaintiff's "dignity, and her personal autonomy . . . from the unnecessary and arbitrary actions of the Defendants." See Mendoza v. United States Immigration and Customs Enforcement, 849 F.3d 408, 420-21 (8th Cir. 2017). Thus, Plaintiff cannot attempt to assert a substantive due process violation because of her allegedly illegal search, seizure, or detention.

Plaintiff's Fourteenth Amendment procedural due process claim also fails for similar reasons. Plaintiff claims Defendants violated her right to procedural due process because they detained her without probable cause. The Fourth Amendment, however, already requires the government to establish probable cause prior to any extended detention. Gerstein, 420 U.S. at 114. Thus, any determination concerning the legitimacy of Plaintiff's detention under the Fourteenth Amendment's due process clause would be duplicative of Plaintiff's Fourth Amendment claim. See Case v. Milewski, 327 F.3d 564, 568 (7th Cir. 2003) ("[A] seizure that passes muster under the Fourth Amendment should also satisfy the requirements of the due process clause. Thus, if this court upholds [the plaintiff's] arrest when it is reviewed under Fourth Amendment rules, [the plaintiff] will not succeed by recasting his challenge in the language of due process."); see Lawson v. City of Coatesville, 42 F. Supp. 3d 664, 676-77 (E.D. Pa. 2014); Crouse v. South

Lebanon Tp., 668 F. Supp. 2d 664, 674 (M.D. Pa. 2009) (noting that the Fourth Amendment is "explicitly tailored for the criminal justice system" and governs "the process that is due for seizures of persons or property"). Plaintiff, therefore, must challenge the legitimacy of her detention under the Fourth Amendment, not the Fourteenth Amendment's due process clause. Case, 327 F.3d at 568; Shimomura v. Carlson, 17 F. Supp. 3d 1120, 1129 (D. Colo. 2014) ("Considering that his due process claim effectively mirrors his allegation of illegal arrest under the Fourth Amendment, [the plaintiff] has failed to state a claim under the Fifth and Fourteenth Amendments upon which relief can be granted."); Meketa v. Kamoie, 955 F. Supp. 2d 345, 365-66 (M.D. Pa. 2013) ("[I]t is the Fourth Amendment, not the Fourteenth Amendment, which is the proper vehicle for addressing any unlawful pretrial deprivations of liberty incidental to criminal proceedings."); Sayan-Resto v. Berrios, 933 F. Supp. 2d 252, 265 (D. P.R. 2013) (holding that a plaintiff must pursue her illegal detention claim under the Fourth, not the Fourteenth Amendment); Crouse, 668 F. Supp. 2d at 674 ("[A] pretrial deprivation of liberty that is related to a criminal proceeding is addressed not through procedural due process, but the Fourth Amendment."). Accordingly, the Court **GRANTS** Defendants' motion for summary judgment with regards to Plaintiff's substantive and procedural due process claims.

### B. Qualified Immunity and Supervisory Liability

Because Plaintiff successfully established that Defendants violated her Fourth Amendment right to be free from unreasonable seizure when they refused to release her on bond, the Court must now consider whether Defendants' liability is extinguished by the doctrine of qualified immunity. The Court must also consider Plaintiff's claim that Sheriff Anderson, Captain Kearney, and Captain Staten should be subject to supervisory liability.

### 1. Qualified Immunity

Sheriff Anderson, Captain Staten, and Jailer Mills assert qualified immunity for their role in detaining Plaintiff. Qualified immunity aims to limit personal liability of government officials by allowing them to "reasonably anticipate when their conduct may give rise to liability for damages." Anderson v. Creighton, 483 U.S. 635, 646 (1987) (internal quotations omitted). It provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (citations omitted).

Establishing qualified immunity is a two-step process. First, the official must "prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Vineyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)). If "the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id. To prove qualified immunity is not appropriate at the summary-judgment stage, a plaintiff must prove (1) that the officer's actions violated the Constitution, and (2) that the constitutional right violated was clearly established. See id.

When the alleged constitutional violation concerns a lack of probable cause, however, courts use a special qualified immunity standard. Under this standard, "[o]fficers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest." Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004). Arguable probable cause exists if "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff . . . ." Id. (internal quotations and citations omitted).

Plaintiff does not dispute that Defendants were acting in their discretionary authority. Thus, the burden shifts to

Plaintiff to prove that Defendants lacked arguable probable cause to detain her. If she makes this showing, she must also prove that the right violated was clearly established.

The Court finds that, taking the facts in the light most favorable to Plaintiff, she has established Defendants lacked arguable probable cause. According to Plaintiff, Defendants detained her, a United States citizen, for 25 hours based upon a fax from I.C.E. stating, without any supporting evidence, that Plaintiff appeared to be subject to removal. Furthermore, they detained her in spite of the fact that she had in her possession a valid Georgia driver's license — a form of identification which is not knowingly given to persons unlawfully present in the United States — and in spite of the fact that her sister procured and proffered a copy of her birth certificate, social security card, and school records. No reasonable officer in the same circumstances could have believed probable cause existed to detain Plaintiff for being in the country illegally. Kingsland, 382 F.3d at 1233 ("If the defendants fabricated or unreasonably disregarded certain pieces of evidence to establish probable cause or arguable probable cause, as alleged, reasonable officers in the same circumstances and possessing the same knowledge as the defendants could not have believed that probable cause existed to arrest the plaintiff.").

The only remaining question is whether Defendants violated a clearly established right. The right to be free from arrest

or extended detention absent probable cause is textbook law. See Gerstein v. Pugh, 420 U.S. 103, 114 (1975). Probable cause is the standard used in justifying all arrests or detentions, and officers are on ample notice that they must clear that threshold before detaining an individual without a warrant. Kingsland, 382 F.3d at 1232. Thus, the Court finds that the right to be free from arrest absent probable cause is a clearly established constitutional right.

Because Plaintiff has produced sufficient evidence to show that Defendants detained her without arguable probable cause in violation of a clearly established constitutional right, Defendants are not entitled to qualified immunity at this time. Thus, the Court **DENIES** Defendants' summary judgment motion for qualified immunity as it relates to Plaintiff's unconstitutional detention.

## 2. Supervisory Liability

Supervisory defendants may not be held liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). They may only be held liable under § 1983 "if they personally participated in the allegedly unconstitutional conduct or if there is 'a causal connection between [their] actions . . . and the alleged constitutional deprivation.'" West v. Tillman, 496 F.3d 1321, 1328 (11th Cir. 2007) (quoting Cottone, 326 F.3d at 1360). To establish a causal connection, a Plaintiff must show either (1)

"a history of widespread abuse [that] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [that the alleged supervisor] fails to do so"; (2) a "custom or policy [that] results in deliberate indifference to constitutional rights" or (3) facts supporting "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone, 326 F.3d at 1360. In any event, "[t]he standard by which a supervisor is held liable in his individual capacity for actions of a subordinate is extremely rigorous." Id.

Sheriff Anderson, Captain Kearney, and Captain Staten argue that they are not subject to supervisory liability. Sheriff Anderson and Captain Staten assert they did not personally participate in detaining Plaintiff. (Doc. 57-6 at 15.) Sheriff Anderson, Captain Kearney, and Captain Staten further assert they are not causally connected to Plaintiff's alleged unconstitutional detention because "[p]laintiff has not produced any evidence that Sheriff Anderson, Captain Kearney, or Captain Staten were aware of 'obvious, flagrant, [or] rampant' violations of constitutional rights, implemented a policy that resulted in deliberate indifference, or directed the deputies or jailers to act unlawfully." (Id. at 16.) Because Defendants have asserted a lack of evidence, the Court must determine whether Plaintiff's reply briefs point to evidence demonstrating

32

that any Defendant personally participated in or was causally connected to the constitutional deprivation.

Plaintiff affirmatively concedes that Sheriff Anderson was not personally involved in detaining Plaintiff. The record, however, contains evidence that Captain Staten was personally involved in detaining Plaintiff. (See Doc. 95-1 at 3 ("Per Captain Staten, if I.C.E. does not send a hold on subject by 02/03/2014, subject can post bond. Bond is in file. . . . Per Captain Staten if we do not hear anything from ICE by Monday, then subject can post bond on Monday.") (emphasis added)). Thus, while claims of personal participation cannot proceed against Sheriff Anderson, the Court finds sufficient evidence to support a genuine dispute of material fact as to whether Captain Staten personally participated in Plaintiff's detention.

The Court, however, must also examine whether Plaintiff produced sufficient evidence that Sheriff Anderson or Captain Kearney were causally connected to the alleged constitutional deprivation. The best the Court can discern, Plaintiff asserts that: (1) "Anderson and Staten's failure to investigate [Plaintiff's detention], or reprimand or discipline Mills constituted a policy, practice or custom of deliberate indifference to Mill's misconduct toward Plaintiff"; (2) "[Jailer] Mills denied receiving much training on I.C.E. holds and I.C.E. detainers"; and (3) "The Defendants have no written policy or procedures having to do with I.C.E. holds and I.C.E. detainers or anything having to do

with I.C.E. yet, Defendant Anderson claims that his staff receives annual training about I.C.E. and immigration laws" (Doc. 105 at 15, 17). Plaintiff also argues that: (1) "the Sheriff's policy was to effectuate all detainers, regardless whether [sic] I.C.E. had-or [sic] even claimed to have had-probable [sic] cause to support the request"; and (2) "Sheriff's officials, following the Sheriff's policy or practice, re-imprisoned [Plaintiff] without asking either her or I.C.E. any additional questions." (Doc. 106 at 15).

After examining Plaintiff's briefs, the Court finds that Plaintiff did not provide evidence such that a reasonable jury could find a causal connection between the actions of Sheriff Anderson or Captain Kearney and Plaintiff's detention. First, to establish a causal connection, Plaintiff must provide some evidence that Defendants were aware of a problem and failed to fix it. Cottone, 326 F.3d at 1360. Plaintiff, however, has provided no such evidence. For example, she provides no evidence of other complaints made to the police department, no evidence of other delayed releases caused by a suspect's uncertain immigration status, and no evidence that the training given to deputies and jailers falls below accepted standards. Second, Defendants' alleged failure to investigate or reprimand Jailer Mills does not constitute a policy or practice. Finally, Plaintiff's claim that Sheriff Anderson had a policy of detaining all suspects that triggered a detainer by I.C.E. was

not supported by any citation to the record.  Thus, the Court will not consider this factual assertion.  (Doc. 91.)

Additionally, Plaintiff has provided no case law explaining why the scant evidence she has provided is sufficient to establish supervisory liability.  She has the burden of demonstrating what evidence exists to show a causal connection and why that evidence is sufficient to survive summary judgment.  Just as this Court will not scour the record to find evidence which supports her claims, it will not scour Westlaw or Lexis Nexis to find case law which supports her claims.  In our adversarial system, that responsibility belongs to Plaintiff, not the Court.

Plaintiff has failed to provide sufficient evidence that demonstrates a causal connection between the actions of Sheriff Anderson or Captain Kearney and the constitutional deprivation.  She has also conceded that Sheriff Anderson did not personally participate in Plaintiff's detention.  Thus, the Court **GRANTS** Defendants' motion for summary judgment with regards to the supervisory liability claims against Sheriff Anderson and Captain Kearney.  Because the record provides sufficient evidence that Captain Staten personally participated in detaining Plaintiff after she was eligible for release, however, that claim shall proceed to trial as well.

## IV. CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion for summary judgment.  (Doc. 57.)  It **GRANTS** summary judgment in

favor of Defendants' motion and **DISMISSES** (1) Plaintiff's § 1983 claim against Deputy Norman and Sergeant Munsey for allegedly violating the Fourth Amendment's prohibition on unreasonable searches and seizures; (2) Plaintiff's supervisory liability claim against Sergeant Munsey, Sheriff Anderson, and Captain Kearney for Deputy Norman and Sergeant Munsey's alleged violation of the Fourth Amendment's prohibition on unreasonable searches and seizures; (3) Plaintiff's supervisory liability claims against Sheriff Anderson and Captain Kearney for their alleged role in unconstitutionally detaining her; (4) Plaintiff's claims against all Defendants related to the alleged substantive and procedural due process violations; and (5) Plaintiff's claims against all Defendants related to the alleged equal protection violations. The Court **DENIES** Defendants' motion and allows the following claims to proceed to trial: (1) Plaintiff's claim that Jailer Mills and Captain Staten detained her in violation of the Fourth Amendment; and (2) Plaintiff's supervisory liability claims against Captain Staten.

The Court also **DENIES** as untimely Defendants' motions to exclude Plaintiff's expert testimony. (Docs. 71, 72.)

**ORDER ENTERED** at Augusta, Georgia, this _29th_ day of September, 2017.

_____
CHIEF JUDGE J. RANDAL HALL
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA